IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN CADMUS, | : | CIVIL NO: 1:12-CV-2335 |
| Petitioner, | : | (Judge Jones) |
| v. | : | (Magistrate Judge Carlson) |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| Respondents. | : | |

# REPORT AND RECOMMENDATION

## I. Statement of Facts and of the Case

The instant habeas corpus petition represents the latest chapter in an 17-year legal saga, and reflects the second, successive federal habeas corpus petition filed by the petitioner as part of this legal saga. The background of this case was aptly summarized by this court in 2010 when we found that the prior habeas corpus petition filed by Cadmus was time-barred:

> This case arises out of a brutal double murder that took place in Dauphin County, Pennsylvania, 14 years ago, in March of 1996. On March 6, 1996, police and fire officials responded to a suspicious fire inside a residence at 1052 North Mountain Road, in Lower Paxton Township. Inside the home first responders uncovered a grisly scene-a man and a woman, dead, both victims of homicide.(Doc. 26, Ex. B and J, PCRA court opinion.) One of the victims of this killing, Kevin Beam, had been beaten about the head and strangled, and had died as a result of manual strangulation and blunt force trauma. (*Id.*) The second victim, a woman, Linda Arnold, had been shot in the head. (*Id.*) Police determined that, following this double murder, a fire had been

deliberately set at the residence, in an apparent effort to mask the brutal killing of these two victims. (Id.)

Acting on this grisly discovery, police then launched a five-year investigation into this double murder. In the course of this investigation, police identified the Petitioner, Norman Cadmus as a possible suspect and in January 2001 questioned Cadmus, a casual acquaintance of the Arnold family, regarding his knowledge of this dual homicide. (Id.) Under police questioning Cadmus confessed to involvement in these murders. According to Cadmus' confession, on March 6, 1996, he accompanied another man, William Stephens, also known as Billy Lightfeather, to the home of Linda Arnold, 1052 North Mountain Road, to collect a debt Arnold owed Stephens. (Id.)

Cadmus claimed that he initially remained inside the car while Stephens entered the home, but then heard the sounds of a violent confrontation inside the residence. (Id.) Entering the home, Cadmus stated that he came upon one of the victims, Kevin Beam, locked in a violent struggle with Stephens, who was wielding a knife. Cadmus acknowledged to police that he joined in that struggle, grabbing a bottle and striking Beam repeatedly on the head and upper torso with the broken bottle as Stephens slashed his victim with a knife. (Id.) After Beam collapsed unconscious, Cadmus related that Stephens wrapped a plastic bag around Beam's head and asphyxiated him. (Id.) According to Cadmus' confession, Stephens then sought out Linda Arnold, and killed her, shooting her in the head. (Id.) Having participated in this fashion in the double murder of Arnold and Beam, Cadmus then watched as Stephens poured kerosene and paint thinner throughout the house, and set it ablaze in an effort to conceal this killing. (Id.)

Cadmus was taken into custody on February 26, 2001 and charged with first degree murder. (Doc. 26, Ex. A, Case Docket.) Based upon the brutality of the crime, the Commonwealth also put Cadmus on notice that it would seek the death penalty in this case. (Id.) Following suppression hearings and pre-trial proceedings conducted in February and March of 2002, (Id.) the parties entered into a negotiated guilty plea

agreement in this case, one which spared Cadmus from the potential of capital punishment. (Id.)

Under the terms of this plea agreement, Cadmus agreed to enter Alford pleas to two counts of second degree murder, two counts of robbery, a count of arson, a count of burglary, and a count of criminal conspiracy. (Doc. 26, Ex. B, guilty plea transcript.) In return for these guilty pleas, the Commonwealth would forego its capital charges against Cadmus, but it was agreed that the court would impose two consecutive life sentences on Cadmus. (Id.)

Cadmus proceeded to enter this guilty plea on March 20, 2002. (Doc. 26, Ex. B.) In the course of these guilty plea proceedings, the court conducted a careful, thorough colloquy with Cadmus. (Id.) That colloquy touched upon the issue of Cadmus' mental competence, since Cadmus had a prior history of mental health problems. Cadmus' responses to the court's inquiries in this area were clear, cogent and coherent. Cadmus acknowledged the medications he was taking, stated that his mind was clear and that these prescription drugs were not adversely effecting his reasoning. (Id., p. 4.) Cadmus also stated that he was not suffering from any bipolar or schizo-affective episodes, and that his medication was sufficient to ensure clarity of thought on his part. (Id., p. 5.)

Cadmus then demonstrated a full understanding of these proceedings in the course of the guilty plea colloquy. During this colloquy, Cadmus repeatedly provided unequivocal answers to questions posed by the court, addressing the terms of the plea agreement, the penalties for the offenses charged, the nature of an *Alford* plea, the elements of the offenses, and the factual basis for his plea, which was premised on coconspirator liability. (Id., pp. 6–21.) While Cadmus' answers to this battery of questions were clear and unhesitating, Cadmus also showed a full appreciation for the nature of the proceedings, asking the court on occasion to clarify matters for him, posing questions to the court to assure his understanding of the proceedings, and responding appropriately to questions concerning his appreciation of the meaning of consecutive and concurrent penalties. (Id., pp. 4, 6, 23–25.)

> At the close of these proceedings, the court imposed two life sentences on Cadmus, and Cadmus was informed of his post-conviction rights, rights which Cadmus indicated he understood. (Id., pp. 24–31.)

Cadmus v. Warden SCI Coal Twp., 4:08-CV-473, 2010 WL 3081262 (M.D. Pa. June 28, 2010) report and recommendation adopted, 4:08-CV-473, 2010 WL 3081253 (M.D. Pa. Aug. 5, 2010).

"Cadmus took no direct appeal of this conviction and sentence. However, on February 28, 2003, eleven months after his guilty plea conviction, Cadmus filed a petition for relief under Pennsylvania's Post–Conviction Relief Act, (PCRA), 42 Pa.C.S.A. §§ 9541 et seq. . . . , a petition which began a four-year foray through the state courts." Id. This initial state PCRA petition was denied by the trial court, and that denial was affirmed by the Pennsylvania Superior Court in November 2006. Undeterred, Cadmus then appealed to the Pennsylvania Supreme Court, filing a petition for allowance of appeal in December 2006. That petition was denied by the Supreme Court on May 10, 2007. Ten months after his initial state PCRA proceedings concluded, on March 13, 2008, Cadmus filed his first petition for writ of habeas corpus in federal court.

On June 28, 2010, we issued a Report and Recommendation which recommended dismissal of Cadmus' first federal habeas corpus petition. That dismissal recommendation rested, in part, upon our conclusion that:

4

[T]he delays which have plagued this litigation convinces us that these claims are, in fact, now time-barred. The history of this case reveals that Cadmus was convicted in March 2002, but pursued no direct appeal of his conviction and sentence. Instead, Cadmus waited eleven months before commencing state collateral proceedings challenging this conviction in February 2003, proceedings which ended four years later, in May 2007. Cadmus then delayed another ten months before filing this federal habeas petition in March 2008. Thus, on the face of the state court records, this federal habeas petition is clearly untimely, and is barred by AEDPA's one-year statute of limitations.

Cadmus cannot save this untimely petition by asserting that he is entitled to equitable tolling of § 2244's statute of limitations due to his claimed mental impairments. Indeed, this claim has been rebutted by the Pennsylvania courts which have found that Cadmus has not shown that he was mentally incompetent, a factual finding which is fully supported by the great weight of the evidence. This factual finding is presumed to be correct unless Cadmus can show by clear and convincing evidence that it was erroneous. See 28 U.S.C. § 2254(e)(1). In this case, Cadmus has made no such showing, nor can he. Rather, the evidence shows that Cadmus was competent, both at the time of his guilty plea, and in the ensuing months when he actively and astutely, litigated *pro se* claims on his own behalf. Since Cadmus has not made a conclusive showing that his mental impairments prevented him from taking appropriate legal steps to protect his rights, and cannot make such a showing here, this equitable tolling claim must fail. See e.g., Teall v. Vail, No. 09–565, 2010 WL 2079855, *1 (W.D.Wash. May 21, 2010); Sims v. Dwyer, No. 05–727, 2006 WL 2385262, 8 (E.D.Mo. Aug.17, 2006); Jasa v. Mathes, No. 03–4095, 2004 WL 2039854 (N.D.Iowa, Sept.13, 2004); Ryan v. Clarke, 281 F.Supp.2d 1008 (D.Neb.2003).

Thus, no form of statutory tolling can save Cadmus' petition from the fate which AEDPA's one-year statute of limitations dictates for any habeas petition brought years after the Petitioner's conviction. On its face, this petition is untimely and falls outside § 2244(d)'s one-year

limitation period. Nor can we find any extraordinary circumstances of the type which would justify equitable tolling of this limitations period. In this regard, it is incumbent upon Cadmus to demonstrate that: "the petitioner has **'in some extraordinary way** ... been prevented from asserting his or her rights.' The Petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Miller, 145 F.3d at 618–19 (citations omitted) (emphasis added).

Cadmus has not met this burden of proving extraordinary circumstances justifying tolling of this limitations period. Quite the contrary, in this case several factors weigh heavily against equitable tolling of the limitations period for Cadmus. At the outset, equitable tolling would be particularly inappropriate here, given the nature of the claims that Cadmus seeks to advance in a tardy fashion. Liberally construed, Cadmus' petition advances claims that his counsel was incompetent, and his guilty plea was involuntary, matters which would have been apparent to the petitioner many years ago when he first began filing *pro se* petitions in 2002. Therefore, it simply cannot be said "that [t]he [petitioner] ... 'exercised reasonable diligence in investigating and bringing [the] claims' " when he delayed a decade or more before asserting these claims. Miller, 145 F.3d at 618–19 (citations omitted).

Yet, while Cadmus has made no showing of extraordinary circumstances on his part which would justify tolling this limitations period, there are substantial interests that weigh in favor of holding Cadmus to the limitations period prescribed by law. These countervailing interests include the strong societal interests favoring finality in litigation, as well as the institutional interests of the criminal justice system, which favor prompt presentation and resolution of disputes.

However, when considering a statute of limitations question in the context of a belated collateral attack upon a criminal conviction arising out of the killing of others, there is also an important human dimension to the statute of limitations. In 1996, Cadmus participated in a double murder. In 2001 he confessed to his role in these killings. In 2002 he pleaded guilty to these killings. To ignore the limitations period

> prescribed by law, and permit Cadmus to belatedly re-open this case, would compel the families of these victims to, once again, experience the trauma of those events. Since Cadmus has not fulfilled his responsibility to bring this petition in a timely manner, and has not carried his burden of showing extraordinary circumstances justifying a tolling of the statute of limitations, he should not be entitled to compel the government to require his victims' families to revisit these tragic events.

Cadmus v. Warden SCI Coal Twp., 4:08-CV-473, 2010 WL 3081262 (M.D. Pa. June 28, 2010) report and recommendation adopted, 4:08-CV-473, 2010 WL 3081253 (M.D. Pa. Aug. 5, 2010).

This Report and Recommendation was adopted by the district court on August 5, 2010, Cadmus v. Warden SCI Coal Twp., 4:08-CV-473, 2010 WL 3081253 (M.D. Pa. Aug. 5, 2010), and Cadmus' first petition for writ of habeas corpus was dismissed. Cadmus never sought to timely appeal or challenge this ruling. Instead, while this federal habeas corpus petition was pending, Cadmus filed yet another PCRA petition on June 10, 2009 with the Dauphin County Court of Common Pleas. That petition was dismissed on February 14, 2011, as untimely. On February 10, 2012, the Pennsylvania Superior Court affirmed the dismissal of Cadmus' second state PCRA petition as untimely.

On November 21, 2012, Cadmus then filed a second petition for writ of habeas corpus with this court. (Doc. 1.) This petition was filed more than two years after the dismissal of Cadmus' first federal habeas corpus petition, and was submitted nine

months after the state courts dismissed Cadmus' second state PCRA petition as untimely. The respondents have now filed a motion to dismiss this petition as a second and successive petition under 28 U.S.C. §2244. (Doc. 12.) Cadmus has responded to this motion, (Doc. 13.), and this matter is now ripe for resolution. Having considered these pleadings, for the reasons set forth below, it is recommended that this petition for writ of habeas corpus be dismissed without prejudice to Cadmus requesting leave from the court of appeals to pursue a second and successive federal habeas corpus petition.

**II.     Discussion**

**A.     Habeas Relief–The Legal Standard**

In this case, Norman Cadmus, seeks to pursue what is undeniably a second and successive federal habeas corpus petition challenging his 2002 state homicide conviction. This petition is subject to the substantive and procedural standards that govern habeas petitions under 28 U.S.C. § 2254. Thus, Cadmus' latest petition must satisfy the substantive standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a . . . court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254 (a).

As this statutory text implies, prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief under §2254. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a . . . court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to prisoners in those instances where the conduct of some proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).

Prisoners seeking habeas relief under §2254 must also satisfy specific, and precise, procedural standards. Two of these procedural prerequisites have immediate, particular and apparent relevance in this case. At the outset, these procedural prerequisites include a requirement that: "[a] claim presented in a second or

successive habeas corpus application . . . that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1).

> Pursuant to this gate-keeping function, AEDPA instructs the courts of appeals to dismiss any claim presented in a second or successive petition that the petitioner presented in a previous application. See 28 U.S.C. § 2244(b)(1). If a petitioner presents a *new* claim in a second or successive habeas corpus application, we must also dismiss that claim unless one of two narrow exceptions applies:
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> Id. § 2244(b)(2)(A)-(B)(ii). "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." Id. § 2244(b)(3)(A). A petitioner's failure to seek such authorization from the appropriate appellate court before filing a second or successive habeas petition "acts as a jurisdictional bar." United States v. Key, 205 F.3d 773, 774 (5th Cir. 2000).

Blystone v. Horn, 664 F.3d 397, 411-12 (3d Cir. 2011).

Furthermore, prisoners seeking relief under Section 2254 must also timely file motions seeking habeas corpus relief. The Antiterrorism and Effective Death Penalty

Act of 1996("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by prisoners brought pursuant to 28 U.S.C. §2254. In pertinent part, § 224(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d). Section 2244(d) tolls two separate and distinct time periods from statute of limitations calculations. First, by statute: "The limitation period shall run

from the latest of-(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). Thus, the period of time when any direct appeals are actually pending in the state courts is tolled from statute of limitations calculations.

In addition, the statute recognizes a second tolling period, and provides that:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000). Therefore, the time during which a state post-conviction act petition is pending is also excluded from statute of limitations calculations under AEDPA.

In assessing § 2244(d)'s tolling provisions relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such

review.  However, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law.  Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period.  Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions; Miller, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling.  Id. at 618-19. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored.  As the United States Court of Appeals for the Third Circuit has observed:  "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'  Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.'  The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.'  Mere excusable

neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.
> Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. Courts have also repeatedly rejected claims by *pro se* litigants that the burdens of proceeding *pro se* should somehow exempt them from strict compliance with the statute of limitations. See, e.g., Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); United States v. Cicero, 214 F.3d

14

199, 203 (D.C. Cir. 2000); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). Thus, while tardy habeas petitioners often invite courts to find extraordinary circumstances warranting equitable tolling, those invitations are rarely embraced by the courts. See, e.g., Merritt v. Blaine, 326 F.3d 157 (3dCir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002)(same).

### B. Cadmus' Habeas Corpus Petition Should be Dismissed

Judged against these yardsticks, Cadmus' second federal habeas corpus petition fails for at least two reasons. First, this petition is undeniably a second or successive petition. Since this petition is a second or successive petition, it is clear that Cadmus' pathway to relief does not lie in the first instance with this court. Rather,"[t]he Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), places the federal courts of appeals in the role of 'gate-keeper,' charging them with the responsibility of 'preventing the repeated filing of habeas petitions that attack the prisoner's underlying conviction [or sentence].' Leal Garcia v. Quarterman, 573 F.3d 214, 220 (5th Cir.2009)." Blystone v. Horn, 664 F.3d 397, 411 (3d Cir. 2011). Therefore, Cadmus is not free to simply re-state this claim in a second petition filed with the district court. Instead, he must follow the course prescribed by law, he must first present that claim to the court of appeals and must show that: "one of two narrow exceptions applies: (A) the applicant shows that

the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (B)(I) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Blystone v. Horn, 664 F.3d 397, 411 (3d Cir. 2011). Given that Cadmus has not followed this course mandated by law, this petition must be dismissed since: "A petitioner's failure to seek such authorization from the appropriate appellate court before filing a second or successive habeas petition 'acts as a jurisdictional bar.' United States v. Key, 205 F.3d 773, 774 (5th Cir.2000)." Blystone v. Horn, 664 F.3d 397, 411-12 (3d Cir. 2011).

Furthermore, Cadmus' claims clearly run afoul of the one year statute of limitations which applies to these petitions. 28 U.S.C. § 2244(d). In this regard, the chronology of Cadmus' litigation plainly condemns this petition as time-barred. That chronology reveals that Cadmus was convicted eleven years ago in 2002. Following his conviction Cadmus allowed nearly a year to lapse before pursuing any state post-conviction litigation. When that state litigation drew to an unsuccessful close in 2007,

16

Cadmus permitted another ten months to pass before filing his first federal habeas corpus petition. When that petition was dismissed as time-barred in August 2010, Cadmus allowed more than two years to elapse before he filed this, his second federal habeas corpus petition.

Cadmus has identified no form of statutory tolling which can save this petition. In particular Cadmus may not rely upon his untimely second state PCRA petition which was filed in June 2009 to save this second federal habeas corpus petition under the statute of limitations. Such an effort would fail both legally and factually. First, reliance upon this tardy state court filing would be misplaced legally because that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004). Second, as a factual matter, this belated state filing cannot save this petition under AEDPA's one year statute of limitations since it is clear that far more than one year has elapsed in this case, even if the entire period during which this untimely state PCRA petition was pending was tolled and excluded from any limitations calculations.[1] Furthermore, Cadmus has not established the type of

---

[1] Even under the most forgiving of statute of limitations calculations we would be compelled to find that a total of almost 30 months of untolled time has passed in this case consisting of: (1) the initial 11 months which elapsed between Cadmus' March 2002 state guilty plea conviction and the filing of Cadmus' first

17

exceptional circumstances and reasonable diligence which would justify equitable tolling of the limitations period in this case.

In short, in this case we are presented by an untimely and successive federal habeas corpus petition. Since this petition is not properly before us, but rather must first be considered by the court of appeals as a second and successive petition, it is recommended that the petition be dismissed without prejudice to Cadmus requesting leave from the court of appeals to pursue a second and successive federal habeas corpus petition.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that respondent's motion to dismiss (Doc. 12.) be GRANTED and the Petition be DISMISSED without prejudice to Cadmus requesting leave from the court of appeals to pursue a second and successive federal habeas corpus petition.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,

---

state PCRA petition in February 2003; (2) 10 additional months which passed between the conclusion of this initial state PCRA litigation in May 2007 and the filing of Cadmus' first federal habeas corpus petition in March, 2008; and (3) the 9 months which elapsed between the February 10, 2012 Pennsylvania Superior Court decision which affirmed the dismissal of Cadmus' second state PCRA petition as untimely and the November 21, 2012, filing of this second petition for writ of habeas corpus in federal court. (Doc. 1.)

recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of June 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge